[No. 1892.]

### Jesse Jackson v. The State.

1. **Principal Offenders — Charge of the Court.** — The mere presence of an accused at the place and time of the commission of a felony, if he takes no part by word or act in the crime, will not implicate him as a principal offender, even though he makes no effort to prevent the perpetration of the offense. See the opinion on the question, and note a special charge which, presenting correctly the law upon the question as applied to the facts of the case, was erroneously refused.

2. **Same — Circumstantial Evidence.** — The issue in the case depending solely upon circumstantial evidence, the failure of the trial court to give in charge to the jury the law of circumstantial evidence was fundamental error.

3. **Practice — Evidence.** — A State's witness, over objection, was permitted to testify that, a few moments after the alleged theft, he went to the party from whom the property was stolen and told him that he had seen two suspicious looking negroes going out of the field from which the property was taken, one of whom the witness recognized in the defendant. *Held* that, in permitting the witness to testify as to his statements to the injured party, the court erred. The statements were but hearsay.

Appeal from the District Court of Red River. Tried below before the Hon. D. H. Scott.

The indictment charged the appellant and Arch Saddler jointly with the theft of a gun from the possession of F. W. Reeves, who was holding the same for W. A. Reeves, the owner; the gun being of the value of $25. The theft occurred in Red River county, Texas, on the 27th day of October, 1885. A severance being awarded upon the application of the accused, the appellant was placed upon his trial and convicted, the jury assessing his punishment at a term of three years in the penitentiary.

F. W. Reeves, the first witness for the State, testified, in substance, that on the morning of October 27, 1885, when he and his children went from home to his field to pick cotton, he took with him the muzzle-loading, double-barreled shot-gun which belonged to his brother, W. A. Reeves. Reaching the field, he placed the gun in a corner of the fence, and with his children went to work at a point in the field about three hundred yards from where he left the gun, and beyond a mound which obstructed the view between the two places. Within thirty minutes he was informed of the presence of some unknown negroes in the field near the point where he had left the gun. Repairing to that point he discovered that the gun had been taken, and found the tracks of two horses and a colt leaving the field near the point where he had left the gun. Witness went im-

mediately to Albion, a half mile distant, organized a *posse* and followed the supposed thieves over the trail, going eastward.     After traveling about four miles they met the defendant and Arch Saddler, returning over the route they had previously traveled.     Saddler had the gun in his possession.     The two were arrested, neither making resistance, but neither saw the *posse* until they met.     When arrested the defendant said that he did not take the gun.     A country road ran parallel with the fence against which the gun was sitting.     At a point about one hundred yards from that road a path led into the field at a pair of bars, and led through the field down the fence.     That path was frequently used by the occupants of the adjoining field, but was not a public thoroughfare.     The defendant was a stranger in the neighborhood.     The gun was out of the witness's possession about two hours.     The gun was taken without the knowledge or consent of the witness.

W. A. Reeves testified, for the State, that he owned the gun in question, and loaned it to his brother, F. W. Reeves, some time before the taking.     He did not consent to the taking of it either by the defendant or other person.

Lindsay Myers testified, for the State, that on the morning of the alleged theft, while traveling up the fence around Reeves's field, he saw two negroes at the fence about one hundred yards ahead of him.     One of them was sitting on a horse outside of the field, and the other was on the ground replacing the last two rails of the fence.     Having replaced the rails the man mounted, and the two rode off towards the public road.     The two men were Arch Saddler and the defendant.     One or the other, witness thought Arch Saddler, had a gun in his hands.     The two men left the field at an unusual place of egress, whereupon witness went to F. W. Reeves, who was in the field, and told him that he had just seen two strange and suspicious looking negroes leave his field.     Reeves could not be seen at the point in the field where he then was, from the point where the defendant and Saddler left the field.

The several witnesses introduced by the State to prove the value of the gun varied in their estimates, but the lowest estimate placed the value at $20 or $25.     The State closed.

Two or or three witnesses for the defense placed the value of the gun at less than $20, its value being affected by the fact that it was a muzzle-loader.     The material of which it was made was superfine.

The motion for new trial raised the questions discussed in the opinion.

*Wright & Shaw*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge.    Appellant and one Saddler were jointly indicted for theft of a gun. After a severance had at their instance, appellant was first placed upon trial, and, the result being a verdict and judgment of conviction, he appeals.

It is shown by the evidence that the gun was actually taken by Saddler, defendant being present at the time, and that the parties · were still in company together an hour or so afterwards, when the gun, which was still in the actual possession of Saddler, was re-claimed and recovered by the owner. No one saw the original tak-ing. In his charge, after instructing the jury as to the law of principals to the effect that all those present at the commission of an offense, and who, knowing the unlawful intent, aid by act and encourage by words and gestures those actually engaged in its com-mission, are principal offenders, etc. (Penal Code, art. 75), the learned judge further instructed them in effect that if, however, Saddler stole the gun, and defendant, though present, did not thus aid and encourage him in its theft nor agree thereto, then he would not be guilty, and they would, if they so believed, find him not guilty.

· Upon this point appellant's counsel requested an instruction which was refused, and which was in these words: "The bare pres-ence of defendant at the time of the taking (if you should find from the evidence that he was present) would not justify his con-viction unless the evidence shows that he did some act aiding, abet-ting, assisting or encouraging the person who did commit the theft." This instruction was a more direct, affirmative presentation of the law of the case than as it was presented in the main charge, and should, when requested, have been given in connection with the main charge. For the settled law is that "a mere presence is not sufficient, nor is it alone sufficient in addition that the person pres-ent, unknown to the other, mentally approves what is done. There must be something going a little further; as, for example, some word or act." The party to be charged must, in the language of Cockburn, C. J., "incite or procure or encourage the act. His will must in some degree contribute to what is done." . . . "From the proposition that mere presence at the commission of a crime does not render a person guilty it results that if two or more are lawfully together, and one does a criminal thing without the concurrence of

the others, they are not thereby involved in guilt. But, however lawful the original coming together, the after conduct may satisfy the jury that all are guilty of what is done." (1 Bish. Crim. L. (7th ed.), §§ 633, 634; *Mercersmith* v. *The State*, 8 Texas Ct. App., 211; *Stevenson* v. *The State*, 17 Texas Ct. App., 619; *Golden* v. *The State*, 18 Texas Ct. App., 637.)

" Although a man may be present whilst a felony is committed, if he take no part in it and do not act in concert with those who committed it, he will not be a principal merely because he did not endeavor to prevent the felony or apprehend the felon. Whether he was aware of the intention of his companion and participated in it is the fact to be proved in order to implicate him in the criminality of the act." (*Burrell* v. *The State*, 18 Texas, 713.) Nor will concealment of the offense after its commission be, of itself, sufficient to establish guilt. (*Ring* v. *The State*, 42 Texas, 282.) This view of the law was specially called for by the facts of the case, and the jury should have been fully instructed with regard to it.

Another error in the charge is one of omission, but of a character uniformly held to be fundamental. The case was one purely of circumstantial testimony as to the original taking, no one having seen either Saddler or defendant take the gun. We find no instruction to the jury relative to testimony of this character.

Several bills of exception were saved by defendant to rulings upon the admissibility of evidence. We will notice but one, inasmuch as the rest are not deemed of sufficient importance to require discussion or even notice.

Over objection by defendant, the State was permitted to prove by one Myers that, a few moments after the theft is alleged to have occurred, the witness went to Reeves, the party from whom the gun is alleged to have been stolen, and told him, Reeves, that he, witness, had seen two suspicious looking negroes going out of the field, and witness recognized defendant in court as 'one of the suspicious parties he had informed Reeves about. Objection was as to the admissibility of the witness's suspicions as he stated them to Reeves. The exception was well taken and should have been sustained. Whilst it was admissible for Myers to testify to what he had seen, and for Reeves to testify generally to the fact that from information derived by him from Myers he made pursuit and captured the parties in possession of the gun, statements made by Myers to Reeves, whether as to the facts seen by Myers and his opinions, conclusions or suspicions deduced from those facts, were mere hearsay and inadmissible.

We have doubts as to the conclusiveness and sufficiency of the evidence in so far as it relates to the guilt of this appellant. Such doubts, however, might not have occurred had the charge of the court submitted the law to the jury as fully as it is above enunciated.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered January 23, 1886.]